UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA AARON KEATING, #841873,

        Petitioner,

                              CASE NO. 2:21-CV-10112

v.

                              HONORABLE NANCY G. EDMUNDS

CONNIE HORTON,

        Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.    Introduction**

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Joshua Aaron Keating ("Keating") was convicted of first-degree criminal sexual conduct (person under 13), Mich. Comp. Laws § 750.520b(1)(a); two counts of second-degree criminal sexual conduct (person under 13), Mich. Comp. Laws § 750.520c(2)(b); and indecent exposure, Mich. Comp. Laws § 750.335a, following a jury trial in the Livingston County Circuit Court. He was sentenced to concurrent terms of 15 to 40 years in prison, 10 to 15 years in prison, and one year in jail on those convictions in 2017. In his habeas petition, as amended, Keating raises claims concerning the conduct of the prosecutor, the effectiveness of trial counsel, and the validity of his sentence. For the reasons set forth, the Court denies the habeas petition, denies a certificate of appealability, and denies leave to proceed in forma pauperis on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from his sexual assault of his stepsister and an adopted sister at their residence in Livingston County, Michigan.   The Michigan Court of Appeals described the relevant facts, which are presumed correct on federal habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendant was tried and convicted of sexually abusing two female members of his family's household. Both victims, BG and AK, testified against defendant during the trial regarding the sexual abuse that defendant repeatedly perpetrated against them. During AK's testimony, she also testified that another member of the household, defendant's stepbrother, Nick Paciocco, sexually abused her. Defendant's aunt testified on defendant's behalf and asserted that defendant had a reputation for honesty in the family community, but AK did not. During direct examination, she testified that she loved defendant, BG and AK, and stated that she "still loved" Paciocco. During cross-examination, the prosecutor asked defendant's aunt why she stated that she still loved him. She explained that she said it that way because Paciocco had been convicted "of a horrible crime" and his mother accused her out in the hallway of being happy that he would die in prison.

*People v. Keating*, No. 340693, 2019 WL 1212722, *1 (Mich. Ct. App. March 14, 2019).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising three claims concerning the conduct of the prosecutor, the effectiveness of trial counsel, and the validity of his sentence.   The court denied relief on those claims and affirmed his convictions and sentences.   *Id.* at *1-5. Petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising those same claims, as well as seven additional claims.   The court denied leave to appeal in a standard order.   *People v. Keating*, 505 Mich. 1015, 940 N.W.2d 77 (2020).

2

Petitioner thereafter filed his initial federal habeas petition with the Court raising all 10 claims as grounds for relief.   ECF No. 1.   Upon initial screening, the Court determined that Petitioner had filed a mixed petition containing both exhausted and unexhausted claims and dismissed the case without prejudice to allow him to fully exhaust his claims in the state courts before proceeding on federal habeas review.   ECF No. 2. The Court informed Petitioner that he could move to reopen the case to proceed only on his properly exhausted claims.   *Id*.   Petitioner exercised that option, ECF Nos. 4, 5, and the Court reopened the case to proceed on the amended petition.   ECF No. 6.   In his amended petition, Petitioner raises the following claims:

I.     The prosecutor committed misconduct by eliciting testimony of a defense witness that Petitioner's brother had been convicted of the same conduct involving the same complainants, thereby bolstering their credibility.   Defense counsel was ineffective for not objecting, or in the alternative the error was plain.

II.    The prosecutor committed misconduct which deprived Petitioner of a fair trial when he distorted his burden of proof by informing the jurors that they were required to decide which side's witnesses were telling the truth.

III.   Petitioner was denied his constitutional right to due process where the trial court improperly determined that he was guilty by a preponderance of the evidence of the unproven charges alleged to have occurred before complainants were thirteen and he must be re-sentenced.

ECF No. 5.   Respondent filed an answer to the amended petition contending that it should be denied because the prosecutorial misconduct claims are barred by procedural default and all of the claims lack merit.   ECF No. 10.   Petitioner filed a reply to that answer.   ECF No. 15.

3

III.    **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at

28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use

when considering habeas petitions brought by prisoners challenging their state court

convictions.   The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal law, as
>        determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>
>        determination of the facts in light of the evidence presented in the
>
>        State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [that] precedent.'"

*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*,

529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas

court to 'grant the writ if the state court identifies the correct governing legal principle

from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.   However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.   The state court's application must have been 'objectively unreasonable.'"   *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.   "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"   *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."   *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."   *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).   A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.   *Id*.   Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's

5

rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

6

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent.   Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA."   *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam).   The decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision.   *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review.   28 U.S.C. § 2254(e)(1).   A petitioner may rebut this presumption with clear and convincing evidence.   *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).   Habeas review is also "limited to the record that was before the state court."   *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.   Discussion

### A.   Procedural Default

As an initial matter, Respondent contends that Petitioner's prosecutorial misconduct claims are barred by procedural default.   The Court declines to address this defense.   While a state procedural default can, and often should, provide sufficient reason for a federal court to deny habeas relief, *see Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019) ("Comity and federalism demand nothing less."), procedural default is not a jurisdictional bar to habeas review.   *Howard v. Bouchard*, 405 F.3d 459, 476

7

(6th Cir. 2005).   Moreover, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits."   *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)); *see also Overton v. MacCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first.").   The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."   *Lambrix*, 520 U.S. at 525.   Such is the case here.   The procedural issue is complex and intertwined with the merits of the ineffective assistance of counsel claim, and the substantive claims are more readily decided on the merits.   Accordingly, the Court shall proceed to the merits of the claims.

**B.    Merits**

**1.    Prosecutorial Misconduct Claims**

Petitioner asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by bolstering/vouching for the victims' credibility and by shifting the burden of proof.   Respondent contends that these claims are procedurally defaulted and that they lack merit.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."   *Berger v. United States*, 295 U.S. 78, 88 (1935).   To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so

8

infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard).   The standard "is a very general one, leaving courts more leeway ... in reaching outcomes in case-by-case determinations." *Parker*, 567 U.S. at 48 (punctuation modified).   "That leeway increases in assessing a state court's ruling under AEDPA" because the court "cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable." *Stewart v. Trierweiler*, 867 F.3d 633, 638-639 (6th Cir. 2017)

### a.   Bolstering/Vouching for the Victims' Credibility

Petitioner first asserts that the prosecutor erred by bolstering/vouching for the victims' credibility while questioning his aunt, Merry Keating.   In particular, he objects to the following exchange:

> Q. I'm gonna start where you left off with Mr. Sizemore [trial counsel]. A second ago he was asking you about how you feel about the different family members. And you said I still love Nick. Why did you include that?
> A. Because his mother just made a comment to me in the hallway. She said that Nick will probably die in prison and that should make me happy. And I said no it doesn't make me happy.
> Q. Well why would that make you happy?
> A. I don't know. I don't know. I don't know. It took me off guard and it shocked me.
> Q. Is there some reason why you would not love Nick anymore?
> A. No.
> Q. Okay. Why did you say I still love Nick?
> A. Because he's [] been convicted a [sic] horrible crime. And his mother

9

just accused me of being happy that he would die in prison.
Q. And you're not?
A. No I'm not happy.

8/9/17 Trial Tr., ECF No. 11-10, PageID.832-833.

It is improper for a prosecutor to express his or her own personal opinions about a defendant's guilt or a victim's or witness's credibility.   *United States v. Young*, 470 U.S. 1, 9-10 (1985); *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005).   Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charges against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own.   *Young*, 470 U.S. at 18-19; *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008); *see also Wilson v. Bell*, 368 F. App'x 627, 633 (6th Cir. 2010) (citing cases).

The Michigan Court of Appeals considered this claim on direct appeal and denied relief.   The court explained in relevant part:

> Under Michigan law, "a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v. Dobek*, 274 Mich. App. 58, 63; 732 N.W.2d 546 (2007) (citations omitted). A fair trial for a defendant "can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id*. at 63-64. Witnesses are not permitted "to comment or provide an opinion on the credibility of another witness since matters of credibility are to be determined by the trier of fact." *People v. Buckey*, 424 Mich. 1, 17; 378 N.W.2d 432 (1985) (quotation marks and citations omitted). Nevertheless, one "of the elementary principles of cross-examination is that the party having the right to cross-examine has a right to draw out from the witness and lay before the jury anything tending or which may tend to contradict,

10

weaken, modify, or explain the testimony of the witness on direct examination or which tends or may tend to elucidate the testimony or affect the credibility of the witness." *People v. Salimone*, 265 Mich. 486, 499-500; 251 N.W. 594 (1933). Further, "prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v. Noble*, 238 Mich. App. 647, 660; 608 N.W.2d 123 (1999) (citation omitted).

In this case, defendant's aunt's testimony on direct examination in response to questions by defense counsel, that she "still loved" Paciocco, invited the prosecutor to inquire further on cross-examination regarding her remark. The record reflects that the prosecutor asked her to explain her comment. She clarified that she still loved him because "he's been convicted of a horrible crime. And his mother just accused me of being happy that he would die in prison." She stated that she was not happy. After she clarified her remarks the prosecutor cross-examined her on other aspects of her testimony regarding defendant's reputation for truthfulness and her opinion that AK had a reputation in the family for being dishonest. The record reflects that the prosecution did not ask defendant's aunt questions regarding the offenses of which Paciocco had been charged and convicted. Her testimony made no mention that he was convicted for committing the same type of offenses for which defendant faced trial. She also did not testify that Paciocco's case involved the same victims as in this case. Notably, the trial record in this case does not indicate that the victims testified in any proceeding that involved Paciocco. We find nothing in the record that supports defendant's contention that the testimony bolstered the victims' credibility. Defendant has not demonstrated plain error that affected his substantial rights. The record does not establish bad faith on the part of the prosecutor or that defendant was prejudiced by admission of defendant's aunt's testimony.

*Keating*, 2019 WL 1212722 at *2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner fails to show that the prosecutor's question to Merry Keating on why she said she still loved Nick Paciocco implies that the victims' testimony was corroborated by evidence known to the prosecutor, but not known to the jury. The prosecutor merely asked Merry to explain her statements on direct examination. When the prosecutor asked her "[w]hy do you

say you still love Nick?", Merry responded that he had "been convicted of a horrible crime."   That answer was not necessarily prompted by the prosecutor's question.   A prosecutor's good faith effort to admit evidence does not constitute misconduct, particularly where, as here, the trial court admits the evidence.   *Cristini v. McKee*, 526 at 900.

More importantly, the prosecutor did not ask Merry Keating about the substance of Paciocco's crime or whether it involved the same victims.   Simply put, the record fails to show that the prosecutor used Merry's testimony to bolster the victims' testimony or vouch for their credibility.   The record also fails to show that the prosecutor expressed a personal belief in Petitioner's guilt or the victims' credibility.   Habeas relief is not warranted on this claim.

### b.   Shifting the Burden of Proof

Petitioner next asserts that the prosecutor erred by shifting the burden of proof during closing arguments by indicating that the jury was required to believe one side or the other in reaching a verdict.   Specifically, he objects to the following remark:

> This case was not about whether the acts alleged count as criminal sexual conduct. I think that's clear from the testimony you all heard. Either the defendant had his penis in each of those girls' mouths or had them touch his penis and put his finger in their vaginas or he didn't right? Those are kind of the two binary outcomes here. Either you believe one beyond a reasonable doubt or the other is potentially true.

8/11/ /17 Trial Tr., ECF No. 11-12, PageID.1118.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief.   The court explained in relevant part:

> To prove prosecutorial misconduct, defendant must establish that he was

12

denied a fair and impartial trial. *Dobek*, 274 Mich. App. at 63. A fair trial for a defendant "can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id*. at 63-64. "[A] prosecutor may not imply in closing argument that defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v. Green*, 131 Mich. App. 232, 237; 345 N.W.2d 676 (1983) (citations omitted). Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *People v. Thomas*, 260 Mich. App. 450, 454; 678 N.W.2d 631 (2004). Prosecutors have "great latitude regarding their arguments" in closing and are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich. App. at 236, citing *People v. Bahoda*, 448 Mich. 261, 282; 531 N.W.2d 659 (1995).

In this case, the record reflects that the prosecutor stated repeatedly throughout the prosecution's closing argument that it had the burden of proving beyond a reasonable doubt the elements of the charged offenses. The prosecutor argued that the evidence presented during trial proved all of the elements of the charged offenses. After defendant's closing argument, in rebuttal, the prosecutor summarized the evidence and conceded that the jury could conclude that defendant did not commit the offenses or find that they had doubts. The prosecution, however, argued that, based on the evidence, the jury should find defendant guilty. The record reflects that the prosecutor did not argue that the jury's decision rested solely on whether they believed defendant's or the victims' testimonies. The prosecutor argued that the jury could believe that the sexual acts occurred or disbelieve that they occurred based upon all of the evidence presented during the trial.

When viewed as a whole, the record reflects that the prosecution based its argument on the evidence presented at trial and properly argued to the jury that the prosecution bore the burden of proving the charged offenses beyond a reasonable doubt. We find no merit to defendant's argument that the prosecution distorted the burden of proof in this criminal proceeding.

*Keating*, 2019 WL 1212722 at *3-4.

The state court's decision is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts.   When considered as a whole, the

prosecutor's closing arguments did not distort the burden of proof or improperly shift it to the defense.   To be sure, the trial record demonstrates that the prosecutor repeatedly stated that the prosecution bore the burden of proof and was required to prove the elements of the offenses beyond a reasonable doubt in order to establish Petitioner's guilt of the charged offenses.   *See, e.g.,* 8/11/17 Trial Tr., ECF 11-12, PageID.1119-1121, 1154-1155, 1186-1187.   The prosecutor's isolated remark about whom to believe and binary outcomes, even if improper, did not render the trial fundamentally unfair.

Furthermore, the record shows that the trial court properly instructed the jurors on the law, including the elements of the charged offenses, the presumption of innocence, reasonable doubt, and the burden of proof, explained that the attorneys' statements, arguments, and questions are not evidence, and directed the jurors to evaluate the credibility of witnesses and to decide the case based solely on the evidence.   *See* 8/11/17 Trial Tr., ECF No. 11-12, PageID.1198-1199, 1204-1208.   Such instructions mitigated any potential prejudice to Petitioner.   *See, e.g., Hamblin v. Mitchell*, 354 F.3d 482, 495 (6th Cir. 2003); *Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003). Jurors are presumed to follow the court's instructions.   *Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it.").   Petitioner fails to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair.   Habeas relief is not warranted on this claim.

## 2.     Ineffective Assistance of Counsel Claim

14

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the prosecutor's alleged improper bolstering/vouching of the victims' testimony when questioning his aunt, Merry Keating. Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.   In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of trial counsel.   First, a petitioner must prove that counsel's performance was deficient.   This requires a showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, a petitioner must establish that counsel's deficient performance prejudiced the defense.   Counsel's errors must have been so serious that they deprived the petitioner of a fair proceeding.   *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."   *Id*. at 690.   A reviewing court's scrutiny of counsel's performance is highly deferential.   *Id*. at 689.   There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.   *Id.* at 690.   The petitioner bears the burden of overcoming the presumption that the challenged actions were sound strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable

15

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

The Michigan Court of Appeals considered this claim on direct appeal, applied the *Strickland* standard, and denied relief. The court explained in relevant part:

> To establish ineffective assistance of counsel, a defendant must show "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v. Trakhtenberg*, 493 Mich. 38, 51; 826 N.W.2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v. Carbin*, 463 Mich. 590, 600; 623 N.W.2d 884 (2001) (quotation marks and citation omitted). Defendant must overcome a strong presumption that defense counsel provided effective assistance.

16

*People v. Seals*, 285 Mich. App. 1, 17; 776 N.W.2d 314 (2009). Further, defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v. Hoag*, 460 Mich. 1, 6; 594 N.W.2d 57 (1999). Defense counsel cannot be said to have rendered ineffective assistance by failing to raise meritless or futile objections. *People v. Putnam*, 309 Mich. App. 240, 245; 870 N.W.2d 593 (2015).

In this case, the prosecutor properly cross-examined defendant's aunt. The prosecutor's questioning engaged defendant's aunt regarding her testimony during direct examination and sought clarification on a point that defense counsel elicited from her. We find no impropriety in the prosecutor's conduct. Any objection to the prosecutor's inquiry in this regard would likely have been overruled. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v. Ericksen*, 288 Mich. App. 192, 201; 793 N.W.2d 120 (2010), citing *People v. Snider*, 239 Mich. App. 393, 425; 608 N.W.2d 502 (2000). Therefore, defendant has failed to establish that defense counsel's performance fell below an objective standard of reasonableness.

*Keating*, 2019 WL 1212722 at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.   Given the Michigan Court of Appeals' decision, as well as this Court's determination, that the prosecutor's conduct was not improper, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct.   Trial counsel cannot be deemed ineffective for failing to make a futile or meritless argument.   *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010).   Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard.   Habeas relief is not warranted on this claim.

### 3.   Sentencing Claim

17

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court improperly scored Offense Variable 13 of the Michigan sentencing guidelines at 50 points by relying upon unproven conduct.   Respondent contends that this claim is not cognizable on habeas review and that it lacks merit.

A sentence within the statutory limits is generally not subject to federal habeas review.   *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999); *see also Hutto v. Davis*, 454 U.S. 370, 373-374 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature).   Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law.   *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's sentences are within the statutory maximum sentences for his offenses. *See* Mich. Comp. Laws §§ 750.520b(1)(a) (authorizing a maximum sentence of life imprisonment for first-degree criminal sexual conduct); 750.520(c)(2)(b) (authorizing a maximum sentence of 15 years imprisonment for second-degree criminal sexual conduct), 750.335a (authorizing a maximum sentence of one or two years in jail/prison for indecent exposure).   Consequently, his sentences are insulated from habeas review absent a federal constitutional violation.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief.   The court explained in relevant part:

> A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a

18

particular score. *People v. Hornsby*, 251 Mich. App. 462, 468; 650 N.W.2d 700 (2002) (citations omitted). A sentencing factor must be proved by a preponderance of the evidence. *Hardy*, 494 Mich. at 438. The record reflects that the trial court appropriately considered the evidence and found that a preponderance of the evidence at trial supported the assessment of 50 points for OV 13 because defendant committed at least three sexual penetrations of a person or persons under the age of 13.

Defendant also argues that the trial court did not provide an analysis of facts to support its assessment of points for OV 13. The record, however, reflects that the trial court considered the evidence and the witnesses' testimonies at trial at the sentencing hearing, and concluded that the evidence supported the assessment of 50 points for OV 13. Although the trial court did not elaborate on its analysis, we hold that the record evidence satisfied the scoring conditions prescribed by statute for assessing 50 points for OV 13.

*Keating*, 2019 WL 1212722 at *5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.   A claim challenging the scoring of the offense variables of the sentencing guidelines is not cognizable on federal habeas review because it is a state law claim.   *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *see also Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006).   Alleged errors in scoring the offense variables and determining the sentencing guideline range do not warrant federal habeas relief.   State courts are the final arbiters of state law and federal courts will not intervene in such matters.   *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of

the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

A sentence may violate federal due process, however, if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *Townsend*, 334 U.S. at 741; *see also United States v. Tucker*, 404 U.S. 443, 447 (1972) (citing *Townsend*); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful opportunity to rebut contested sentencing information). To prevail on such a claim, a petitioner must show that the court relied upon the allegedly false information. *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v Jabe*, 803 F. Supp. 70, 81 (E.D. Mich. 1992). Petitioner makes no such showing. He had a sentencing hearing before the state trial court with an opportunity to contest the scoring of the guidelines and the sentencing decision. Petitioner fails to establish that the state court relied upon materially false or inaccurate information in imposing his sentences which he had no opportunity to correct. He was afforded all the process he was due.

Lastly, to the extent that Petitioner asserts that the trial court relied upon facts neither admitted by him nor proven beyond a reasonable doubt in violation of his Sixth Amendment rights, he is not entitled to relief. Such a claim arises from the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v.*

20

*Washington*, 542 U.S. 296 (2004); and *Alleyne v. United States*, 570 U.S. 99 (2013).   In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.   In *Blakely*, the Supreme Court clarified "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  *Blakely*, 542 U.S. at 303.   In *Alleyne*, the Supreme Court extended *Apprendi* to mandatory minimum sentences, ruling that any fact that increases a mandatory minimum sentence is an "element" of the offense that must be submitted to the jury and proven beyond a reasonable doubt.  *Alleyne*, 570 U.S. at 111-112.

In *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines violate the Sixth Amendment because the guidelines "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables that *mandatorily* increase the floor of the guidelines minimum sentence range."  *Lockridge*, 870 N.W.2d at 506.   The court's remedy was to make the guidelines advisory only.  *Id*. at 520-521.

The United States Court of Appeals for the Sixth Circuit has since issued a decision agreeing with *Lockridge* and ruling that *Alleyne* clearly established that Michigan's pre-*Lockridge* mandatory minimum sentencing guidelines scheme violated the Sixth Amendment.  *Robinson v. Woods*, 901 F.3d 710, 716-718 (6th Cir. 2018).   The Sixth Circuit explained that "[a]t bottom, Michigan's sentencing regime violated

21

*Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Id*. at 716.   This Court is bound by the Sixth Circuit's decision.

In this case, Petitioner was sentenced in 2017 – long after *Lockridge* was decided in July, 2015.   At that point, the Michigan sentencing guidelines were advisory, not mandatory.   Purely advisory applications of the guidelines do not run afoul of the Sixth Amendment.   *See Booker*, 543 U.S. at 232 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.   We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *Banks v. Parish*, No. 1:21-CV-00042, 2021 WL 266621, *6-7 (W.D. Mich. Jan. 27, 2021) (denying habeas relief on similar claim because the petitioner was sentenced after *Lockridge* was decided); *Jakubowski v. Chapman*, No. 2:19-CV-13136, 2021 WL 253878, *5 (E.D. Mich. Jan. 26, 2021) (same).

Because the guidelines were advisory at the time of sentencing, the trial court exercised its discretion in imposing sentence.   "Facts that the trial court may have found in support of its exercise of discretion do not implicate the Sixth Amendment." *Holder v. Jackson*, No. 17-CV-408, 2017 WL 3205762, *4 (W.D. Mich. July 28, 2017) (summarily dismissing habeas petition raising similar sentencing claim); *see also Wiggins v. Balcarcel*, No. 18-CV-10124, 2018 WL 659280, *5 (E.D. Mich. Feb. 1, 2018) (citing *Holder* and denying habeas relief).   Petitioner's sentences were not imposed in violation of the Sixth Amendment.   Habeas relief is not warranted on this claim.

22

**V.      Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims.   Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue.   *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).   A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong.   *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).   Petitioner makes no such showing.   Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith.   *See* Fed. R. App. P. 24(a).   Accordingly, the Court **DENIES** leave to proceed in forma pauperis on appeal.

**IT IS SO ORDERED**.


<u>s/ Nancy G. Edmunds</u>
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

Dated:   April 7, 2023